# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LARRY AUSTIN,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**WEXFORD HEALTH SOURCES INC.,**<br>**CHRISTINE BROWN,**<br>**PERCY MYERS,**<br>**BOB BLUM,**<br>**DAVID MITCHELL,**<br>**CRISTEL CROW,**<br>**JANE DOE 1,**<br>**JANE DOE 2,**<br>**JANE DOE 3,**<br>**A. DESAI,**<br>**LATOYA HUGHES,**<br>**NURSE G.,**<br>**NURSE JAMES, and**<br>**NURSE SUMMER,**<br><br>    **Defendants.** | **Case No. 24-cv-01934-SPM** |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

  Plaintiff Larry Austin, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center (Pinckneyville), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

## THE COMPLAINT

Plaintiff alleges that on September 5, 2023, he was struck in the face with a basketball. (Doc. 1, p. 9). Plaintiff's nose began to bleed and swell. His nose continued to bleed through the day, and his breathing became labored. Plaintiff notified security staff about his issues. An officer told Plaintiff to submit a sick call slip because he, the officer, "couldn't just send [Plaintiff] to [the healthcare unit]." Plaintiff submitted a sick call slip that day but was not seen by medical staff until September 8. The med-tech who examined Plaintiff told him that his nose was broken but that Plaintiff may have to submit two more sick call slips to be seen by a doctor. (*Id.*).

Plaintiff's face continued to hurt, and he had difficulty sleeping and breathing. (Doc. 1, p. 9). He informed correctional officers and nurses during "med-lines" on September 9 and 10, 2023, about his symptoms. Both nurses and officers expressed skepticism and responded, "You wouldn't be talking if you couldn't breath[e]." He was also ordered by staff to keep moving because "this isn't sick call." Plaintiff had to ask for ibuprofen from other inmates to help with his pain. (*Id.*).

Around September 11, 2023, Plaintiff was examined by Nurse Summer. (Doc. 1, p. 10). Summer sent Plaintiff to the healthcare unit, and Plaintiff was seen by Nurse Practitioner Blum. Blum confirmed that Plaintiff's nose was broken and told Plaintiff there was nothing he could do for a broken nose. Blum disregarded Plaintiff's complaint that he was unable to breath and that his nose continued to bleed. Blum told Plaintiff to breath out of his mouth and prescribed a shot of Toradol and an ice pack. (*Id.*).

Plaintiff called his father about his lack of medical treatment, and his father called Pinckneyville and complained. (Doc. 1, p. 10). Plaintiff was seen again by Nurse Summer. Plaintiff told Summer about his appointment with Blum, and Summer informed Plaintiff that Blum should have sent Plaintiff for an immediate x-ray and reset his nose. Summer stated that Plaintiff could have a blood clot. Summer told Plaintiff that she would send him to Physician Assistant Desai to

be examined. (*Id.*).

The next day, on September 12, 2023, Plaintiff had an appointment with Physician Assistant Desai, but when he arrived at the healthcare unit, he was told by Officer Morgan that the appointment was cancelled. (Doc. 1, p. 10). Plaintiff asked to speak to Desai, and his request was at first denied by Sergeant Reed. After Plaintiff asked to speak to a mental health professional, he was allowed to briefly speak with Desai. (*Id.*). Desai told him there was nothing she could do for him since he saw a nurse practitioner the day before. (*Id.* at p. 11). Plaintiff was sent back to his housing unit still in pain and with difficulties breathing. (*Id.*).

Plaintiff's father continued to call the facility and talk with staff about Plaintiff's medical care. (Doc. 1, p. 11). Plaintiff submitted more sick call slips. Plaintiff was scheduled for an x-ray and the "M.D. callline." On the way to the x-ray, Plaintiff spoke to Dr. Myers in the hallway and told Dr. Myers that it was imperative that he speak to him. After the x-ray, Plaintiff was informed that his "M.D. callline" appointment had been canceled. Plaintiff was allowed to speak briefly with Dr. Myers. Plaintiff asked why his appointment was canceled when "it was clear his breathing was compromised." Dr. Myers instructed Plaintiff to return to his housing unit and "put in for sick call." (*Id.*).

Plaintiff submitted multiple sick call slips. (Doc. 1, p. 11). He also spoke to Counselor Hill, Counselor Minor, Counselor Supervisor Cowan, and Assistant Warden Crow about his ongoing symptoms. Plaintiff's father called the facility and spoke to multiple staff members, including the secretary of the healthcare unit administrator, Macy. Plaintiff was scheduled to be seen by a nurse practitioner on September 19, 2023, but again, the appointment was canceled. (*Id.*).

On September 20, 2023, Plaintiff was seen by Dr. Myers. (Doc. 1, p. 11). Dr. Myers "did absolutely nothing" for Plaintiff. Dr. Myers told Plaintiff to "toughen up and deal with it cause hockey players get their nose[s] broke all the time." Plaintiff was again seen by Dr. Myers on

September 22, 2023. During the appointment, Dr. Myers told Plaintiff that "since [he] was such a cry baby that he was told to put [Plaintiff] in for [an] ENT consult since the x-rays showed a fracture." (*Id.*).

Plaintiff saw the ENT, Dr. Barbarite, on October 9, 2023, who determined that Plaintiff needed surgery. (Doc. 1, p. 12, 57). Dr. Barbarite stated that there was at least 75% obstruction of the right nasal airway and 100% obstruction of the left nasal airway. According to Dr. Barbarite, because of the lack of oxygen, surgery was urgent. Plaintiff's surgery was scheduled for December 4, 2023, but was canceled due to another unrelated medical issue for which Plaintiff was being treated – a cardiologist had ordered for Plaintiff to wear a heart monitor and have a "heart cath done." (*Id.*).

Plaintiff was cleared by the cardiologist to have nose surgery on January 16, 2024, but Plaintiff did not have the surgery until March 20, 2024. (Doc. 1, p. 12). Following surgery, Plaintiff returned to Pinckneyville and stayed in the infirmary overnight. (*Id.*). The following day, March 21, Dr. Myers instructed for Plaintiff to return to the cell house. Plaintiff asked about follow-up orders and how and when he would receive pain medicine and cleaning instructions. (*Id.* at p. 13). Dr. Myers responded that he, Plaintiff, "would figure it out." At some point, Officer Morgan asked why Plaintiff was being sent back to general population while still in a vulnerable state. Plaintiff and Officer Morgan asked about Plaintiff's pain medication, and Dr. Myers stated that Plaintiff was to "deal with it." (*Id.*).

Later that day, Plaintiff informed Officer Britton that he needed pain medication at 4:00 p.m., but he did not receive the medication until 8:00 p.m. (Doc. 1, p. 13). On March 22, 2024, Plaintiff spoke with Assistant Warden Christel Crow about pain, difficulty breathing, and being placed in a vulnerable position because Dr. Myers had removed him from the infirmary following surgery with no instructions for follow-up care. On his way to commissary, Plaintiff also spoke to

Counselor Minor about his situation. Minor stated that she would talk to her supervisor and Assistant Warden Crow about moving Plaintiff back to the infirmary. At the cell house, Plaintiff repeatedly requested pain medication but was not provided medication until 6:30 p.m. Plaintiff asked the med-tech about instructions for cleaning his nose. The med-tech said they were under instructions not to touch his nose even to clean the blood and excess mucus. (*Id.*).

On March 23, 2024, Plaintiff was seen by Nurse Allie who stated that his medical chart recorded that Plaintiff had been given antibiotic on March 21, but this entry was false. (Doc. 1, p. 14). Nurse Allie gave Plaintiff antibiotics but, pursuant to Dr. Myers' orders, Nurse Allie would not clean his nose. That night, Plaintiff did not receive his pain medication until 8:45 p.m. The next day, March 24, Plaintiff again had to wait for pain medication until morning "med-line," and the nurse would not clean his nose. (*Id.*).

On March 25, 2024, Plaintiff was moved to 6 House until his medical situation was resolved. (Doc. 1, p. 15). Plaintiff was seen by a nurse practitioner, who examined and cleaned his nose. The nurse practitioner told Plaintiff that when he was released by the infirmary, Dr. Myers did not fill out the necessary paperwork regarding "lay-in" or scheduling a follow-up appointment with the surgeon, which was supposed to happen seven days following surgery. (*Id.*).

**PRELIMINARY DISMISSALS**

Plaintiff has failed to state a constitutional claim for monetary damages under Section 1983 against Defendants Healthcare Administrator Christine Brown, Warden Mitchell, and Director Latoya Hughes. None of these individuals are mentioned in the statement of claim and so their alleged involvement in Plaintiff's medical care is unclear. Under Section 1983, a plaintiff must allege that each defendant was personally involved in the deprivation of a constitutional right. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation"); *see also Pepper v. Vill. of Oak*

*Park*, 430 F.3d 806, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation."). Individuals cannot incur liability solely based on their administrative or supervisory positions, as the doctrine of *respondeat superior* (supervisory liability) is not applicable to section 1983 actions. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). As there are no allegations against Brown, Mitchell, and Hughes, any intended Section 1983 claims against them are dismissed without prejudice.

Likewise, the Court also dismisses all claims against Wexford Health Sources Inc. (Wexford). As a corporation, Wexford can only be liable for a policy or practice that caused the alleged violation of a constitutional right. *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). In the Complaint, Plaintiff does not assert any allegations that a Wexford policy or practice impacted his care concerning his nose injury. The only claim against Wexford is that Wexford's Collegial Review Process serves no legitimate purpose and contributed to and caused a delay of care for his unrelated cardiac issues. (Doc. 1, p. 12). To the extent Plaintiff is seeking to hold Wexford liable for constitutionally inadequate care for his cardiac condition, the Court finds Wexford and this claim not properly joined in this action. *See* FED. R. CIV. P. 20(a)(2). Rule 21 of the Federal Rules of Civil Procedure grants district courts broad discretion when deciding whether to sever claims or to dismiss improperly joined defendants. *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011). The Court will exercise its discretion and dismiss Wexford as improperly joined.

Finally, the Court dismisses all claims against Nurse Jane Doe 1, Nurse Jane Doe 2, Nurse Jane Doe 3, Nurse G, and Nurse James. Plaintiff describes various interactions with individuals he simply describes as "Nurse" but, with exception of Nurse Summer, he does not identify any of the nurses by name or Jane Doe designation in the statement claim. It is not clear what conduct Plaintiff is intending to attribute to each nurse defendant. As Plaintiff has not clearly identified Defendants

Jane Doe 1, Jane Doe 2, Jane Doe 3, Nurse G, and Nurse James in the statement of claim and their alleged unconstitutional conduct, all claims against them are dismissed without prejudice. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2).

## DISCUSSION

Based on the allegations and Plaintiff's articulation of his claims in the Complaint, the Court designates the following count:

**Count 1:** Eighth Amendment claim against Myers, Blum, Crow, Desai, and Summer for deliberate indifference to Plaintiff's nose injury.

The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

To state a claim for deliberate indifference, an inmate must put forward facts implicating both an "objective and subjective element, namely that: (1) an objectively serious medical need was deprived; and (2) the official knew that the risk of injury was substantial but nevertheless failed to take reasonable measures to prevent it." *See Chapman v. Keltner*, 241 F.3d 842, 845 (citing *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999)). Deliberate indifference is a high bar. "Neither negligence nor even gross negligence is sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless." *Id.* (citing *Salazar v. City of Chi.*, 940 F. 2d 233, 238 (7th Cir. 1991)). Furthermore, when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs, courts should consider the totality of the received medical care. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000).

Plaintiff has failed to allege sufficient facts to state a claim against Nurse Practitioner Blum.

---

[1] *See Bell Atlantic Corp.,* 550 U.S. at 570.

Plaintiff alleges he saw Blum on September 11, 2023, and Blum disregarded his complaints of pain, continuous bleeding, and difficulty breathing. Blum prescribed him Toradol, a pain reliever, and a permit for ice. Later that day, Nurse Summer stated that Blum should have sent Plaintiff for an "immediate x-ray" and reset Plaintiff's nose. Plaintiff's exhibits show that on September 11, the same day he saw Blum, Blum requested an x-ray and also requested for Plaintiff to be seen for a follow-up appointment with the medical director. (Doc. 1, p. 64).[2] An x-ray was taken a few days later on September 15. Blum's conduct, as described, does not amount to deliberate indifference. Rather, Plaintiff has pled dissatisfaction and disagreement with the treatment decision made by Blum during their single encounter. Blum's failure to choose the "best course of action does not amount to a constitutional violation," as Plaintiff is "not entitled to demand specific care." *Walker v. Wexford Health Sources, Inc.,* 940 F. 3d 954, 965 (7th Cir. 2019) (quoting *Zacker v. Mesrobian,* 299 F. App'x 598, 601-02 (7th Cir. 2008)). Accordingly, Count 1 is dismissed as to Blum.

Count 1 will also be dismissed as to Physician Assistant Desai. Plaintiff claims that the day after he saw Nurse Practitioner Blum, who had prescribed him pain medication and ice and scheduled an x-ray, Desai refused to see him because he has already been treated by Blum and there was nothing more she could do for him at that time. (Doc. 1, p. 11). Plaintiff received the x-ray on September 15, 2023, and five days later saw Dr. Myers. Given the totality of his medical treatment, and Desai's described conduct, Desai's decision not to see Plaintiff on September 12, 2023, does not rise to the level of deliberate indifference to his medical needs.

For similar reasons, Count 1 is also dismissed against Nurse Summer and Assistant Warden Crow. Plaintiff states that he saw Nurse Summer twice on September 11, 2024, and both times she

---

[2] The Federal Rules of Civil Procedure provide that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c). *See Williamson v. Curran,* 714 F. 3d 432, 436 (7th Cir. 2013).

referred him promptly to a provider – Nurse Practitioner Blum and then to Physician Assistant Desai. (Doc. 1, p. 10). This conduct does not amount to deliberate indifference. As for Crow, Plaintiff alleges that he spoke to her on March 22, 2024, about improperly being placed back in general population following his surgery. (*Id.* at p.13). On March 25, "per Assistant Warden Crow," Plaintiff was moved to 6 House until his medical issues were resolved and he was seen by a nurse practitioner. (*Id.* at p. 14-15). Crow's actions do not violate the Constitution.

Count 1 will proceed against Dr. Myers who failed to provide Plaintiff timely and adequate care following Plaintiff's injury and as well as after surgery.

## MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed a motion asking the Court to recruit counsel on his behalf. (Doc. 3). Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." When faced with a motion for recruitment of counsel the Court applies a two part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff has not demonstrated reasonable attempts to find a lawyer prior to seeking the assistance of the Court. He simply provides a list of over twenty names and addresses of firms and attorneys he has contacted. Plaintiff states that he has not received a response from any of them. This is not sufficient information for the Court to determine that he has made a reasonable effort to obtain counsel on his own. *See Santiago v. Walls,* 599 F.3d 749, 760 (7th Cir. 2010). Should Plaintiff choose to move for recruitment of counsel at a later date, the Court directs Plaintiff to include in the motion additional information and documentation, such as letters from the attorneys who declined representation or copies of his payment voucher for the postage.

**DISPOSITION**

For the reasons set forth above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Dr. Myers and is **DISMISSED** as to Blum, Crow, Desai, and Summer. All claims against Wexford Health Sources, Inc., Brown, Mitchell, Jane Does 1, 2, and 3, Hughes, Nurse G, and Nurse James are **DISMISSED without prejudiced**. Because there are no surviving claims against Wexford Health Sources, Inc., Brown, Blum, Mitchell, Crow, Janes Does 1, 2, and 3, Desai, Hughes, Nurse G, Nurse James, and Nurse Summer, the Clerk of Court **SHALL TERMINATE** these individuals as parties on the docket.

The Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for Myers the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendant's place of employment. If the defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the

Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, the defendant needs only to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 21, 2025**

                                                   *s/Stephen P. McGlynn*
                                                   **STEPHEN P. MCGLYNN**
                                                   **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.